UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCUDDER AVENUE LLC, CHRISTINE LETTER GREGG, and JOHN GREGG,<br><br>Plaintiffs,<br><br>v.<br><br>BARRY WAYNE PLUNKETT JR.,[1] NANCY PLUNKETT, ELLEN M. PLUNKETT,[2] JAMES P. PLUNKETT,[3] DENISE L. PLUNKETT,[4] GREGORY KENT PLUNKETT, and SHORELINE PROPERTIES LLC,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* Civil Action No. 1:24-cv-12406-IT |

MEMORANDUM AND ORDER

March 19, 2025

TALWANI, D.J.

John Gregg; his wife, Christine Letter Gregg ("Christine Gregg"); and Scudder Avenue LLC ("Scudder LLC"); bring this action against Barry Plunkett, Jr. ("Barry Plunkett"); his wife, Nancy Plunkett; cousin, Gregory Kent Plunkett ("Kent Plunket"); and siblings, Ellen Plunkett and James Plunkett; James Plunkett's wife, Denise Plunkett; and Shoreline Properties LLC ("Shoreline LLC"). Plaintiffs assert various state-law claims in connection with the allegedly fraudulent conduct of Barry Plunkett, a former attorney, and Nancy Plunkett, a paralegal, during Barry Plunkett's representation of Plaintiffs in connection with their purchase of property located

---

[1] *Individually and as Trustee of the One Twelve Realty Trust and 112 Realty Trust II.*

[2] *Individually and as Trustee and Beneficiary of the 112 Realty Trust II.*

[3] *Individually and as Trustee and Beneficiary of the 112 Realty Trust II.*

[4] *Individually and as Trustee of the 112 Realty Trust II.*

at 570 and 586 Scudder Avenue, Hyannis Port, MA (the "Gregg Property"). Am. Compl. at 2 [Doc. No. 37].[5] Plaintiffs also bring claims concerning allegedly fraudulent conduct by other members of the Plunkett family.

After three of the Defendants removed this action, Plaintiffs John Gregg and Scudder LLC filed the pending Motion to Remand [Doc. No. 15].[6]

For the following reasons, this court finds that it lacks subject matter jurisdiction over this case but that an award of attorneys' fees is not warranted. Therefore, the request that this case be remanded to the Barnstable County Superior Court is GRANTED and the request for legal fees is DENIED.

I.   Introduction

"[A] court's subject-matter jurisdiction defines its power to hear cases." Lightfoot v. Cendant Mortg. Corp., 580 U.S. 82, 92 (2017). Thus, "[f]ederal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case." Acosta-Ramírez v. Banco Popular de P.R., 712 F.3d 14, 18 (1st Cir. 2013). The party invoking federal jurisdiction "must make clear the grounds on which the court may exercise

---

[5] The Amended Complaint is inconsistent as to whether Barry Plunkett was representing John Gregg alone or both John and Christine Letter Gregg. It is similarly inconsistent as to whether both Plaintiffs purchased the property. See, e.g., Am. Compl. at 2 [Doc. No. 37] ("John Gregg engaged the services of Barry Wayne Plunkett Jr. to represent him in connection with Plaintiff John Gregg's purchase of property . . . "); id. at 3 ("That amount . . . was paid into escrow by Plaintiffs John Gregg and Christine Letter Gregg[.]"); id. ¶ 3 ("[Scudder LLC] was established by Defendant Barry Wayne Plunkett Jr. to serve as the holding company for Plaintiff John Gregg for the real estate[.]"); id. ¶ 28 ("It was during this time that the Plaintiffs were negotiating for the purchase of their home in Hyannis Port."); id. ¶ 39 ("Plaintiffs John Gregg and Christine Letter Gregg engaged the services of Barry as an attorney"). For purposes of this order, the court assumes the broader reading.

[6] Also pending but not addressed here are a Motion to Dissolve the Ex Parte TRO [Doc. No. 31] by Defendants Ellen Plunkett, Denise Plunkett, and James Plunkett and a Motion to Dismiss Amended Complaint [Doc. No. 48] by Defendant Gregory Kent Plunkett.

jurisdiction." Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (citing PCS 2000 LP v. Romulus Telecomms., Inc., 148 F.3d 32, 35 (1st Cir. 1998)).

Here, the Notice of Removal [Doc. No. 1] asserts both federal question and diversity of citizenship. See Notice of Removal ¶¶ 21-22 [Doc. No. 1]. The court addresses each in turn, providing, in the discussion of federal question jurisdiction, a brief overview of the factual allegations in the complaint, legal claims, and relevant federal criminal proceedings, and, in the discussion of diversity jurisdiction, the relevant procedural history.

**II.    Federal Question Jurisdiction**

*A.  Background*

1. Events Prior to the Purchase of the Gregg Property

Defendants (except Denise Plunkett and Shoreline LLC) are childhood friends of John Gregg. Am. Compl. ¶ 12 [Doc. No. 37]. John Gregg and Kent Plunkett have engaged in business ventures together over the past several decades. See id. ¶¶ 16-39.

James, Ellen, and Barry Plunkett's father created the 112 Realty Trust II before his death. Id. ¶ 87. At the time of his death in 2002, their father held a property located at 100-112 Washington Avenue in Hyannis Port, MA (the "Plunkett Property"), as the trustee of the 112 Realty Trust II. Id. ¶ 788. Plaintiffs claim various "fraudulent" actions by the individual Defendants (except Denise Plunkett) regarding this property after their father's death and prior to 2016, see id. ¶¶ 90-93, but any such actions preceded the events involving the Plaintiffs at issue here.

Around May 2015, Kent Plunkett asked John Gregg to give business to Barry Plunkett, but John Gregg declined. Id. ¶ 27. Plaintiffs allege that Kent Plunkett was using his position of trust and confidence with John Gregg to provide income to Barry Plunkett "in order that Barry Plunkett may continue" concealing his wrongdoing. Id.

3

Also starting in May 2015, Plaintiffs were negotiating to buy the Gregg Property in Hyannis Port. Id. ¶ 28. Kent Plunkett recommended Barry Plunkett for the transaction, though stating that Barry Plunkett could not "do mortgages." Id. ¶¶ 15, 29-30. Kent Plunkett did not explain why Barry Plunkett was unable to do mortgages "despite his knowledge of such reasons." Id. ¶¶ 30, 33. Unbeknownst to Plaintiffs, but known by Defendants, Barry Plunkett was under investigation for a pyramid scheme involving the defalcation of client funds and fraudulent mortgages—conduct that began in 2014 and for which he was ultimately disbarred on October 10, 2017. Id. at page 3.

    2.   Allegations Against Defendants Barry and Nancy Plunkett

Upon Kent Plunkett's recommendations and his false and misleading statements that Barry Plunkett was competent and trustworthy, in 2016, the Greggs hired Barry Plunkett as an attorney for their acquisition of the Gregg Property. Id. ¶¶ 39-40. The seller of the Gregg Property owed taxes of $185,635.05. Id. ¶¶ 42-43. Barry and Nancy Plunkett created and forwarded to seller's counsel the final settlement for the closing. Id. ¶ 44. Under the settlement, the overdue taxes were to be withheld from the amount due to the seller, held in escrow by Barry and Nancy Plunkett, and paid by Barry Plunkett, as Plaintiffs' counsel, to the Town of Barnstable, in order to clear title. Id. ¶¶ 43-44. As part of the transaction, Barry and Nancy Plunkett established Scudder LLC as a Delaware Limited Liability Corporation to serve as a holding company for the acquisition of the Gregg Property and, without authority from John Gregg, made Barry Plunkett the manager of Scudder LLC and established its mailing address as the Plunkett Law Firm. Id. ¶¶ 3, 46.

On June 24, 2016, title on the Gregg Property was transferred to Scudder LLC by deed. Id. ¶ 47. Plaintiffs paid $50,000 in legal fees to Barry and Nancy Plunkett for the closing. Id. ¶ 45.

Barry and Nancy Plunkett failed to pay any of the escrowed funds to the Town of Barnstable to clear title and instead stole the funds for personal use and concealed their wrongdoing. Id. ¶¶ 48-49. Plaintiffs allege that Barry and Nancy Plunkett engaged in the wrongful conduct as part of a scheme to ensure that the Plunkett Property was shielded from their creditors so that the Plunkett Property could be kept for the benefit of the individual Defendants (other than Denise Plunkett). Id. ¶ 48.

As a result of the conduct of Barry and Nancy Plunkett and the concealment thereof, John Gregg does not have clear title to the Gregg Property. Id. ¶ 55. The taxes on the property have accrued at a 12% per annum interest rate since 2013 and now total over $700,000. Id.

3. The Federal Criminal Indictment

On July 28, 2020, Defendants Barry and Nancy Plunkett were indicted in this district for five counts of bank fraud and one count of aggravated identity theft, and Barry Plunkett was additionally indicted for one count of evasion of assessment of taxes. See Indictment, United States v. Barry Wayne Plunkett, Jr., and Nancy Plunkett, 20-cr-10140-MLW [Doc. No. 1].[7]

4. Events While the Federal Criminal Action Was Pending

Plaintiffs learned in November 2021, that the tax payments Plaintiffs made at closing were stolen by Barry and Nancy Plunkett, that the Gregg Property remained in tax title, that taxes had not been paid at any time since 2016, and that all bills and correspondence concerning the taxes due had been sent to Barry and Nancy Plunkett at the Plunkett Law Firm. Am. Compl. ¶¶ 49, 53 [Doc. No. 37]. After discovering Barry and Nancy Plunkett's wrongdoing with

---

[7] The criminal indictment asserted wrongdoing similar to Plaintiffs' allegations here harming other victims between 2012 and 2016, but makes no mention of the transactions involving the Plaintiffs.

respect to the Gregg Property, John Gregg confronted Defendants (other than Denise Plunkett), all of whom promised to make John Gregg whole upon the sale of the Plunkett Property. Id. ¶ 56. Plaintiff alleges upon information and belief that such promises were made to induce Plaintiffs to refrain from legal action against Defendants, to dissuade John Gregg from contacting the FBI or the Barnstable County District Attorney concerning Barry and Nancy Plunkett's conduct, and to protect the Plunkett Property from creditors, including Plaintiffs. Id. ¶ 57.

In March 2022, Barry Plunkett entered a guilty plea as to all seven counts charged in the Indictment [Doc. No. 1], and Nancy Plunkett entered a guilty plea as to the five counts of bank fraud. See Elec. Clerk's Notes, 20-cr-10140-MLW [Doc. No. 78].

Plaintiffs allege, upon information and belief, that in July 2022 (after Barry Plunkett pled guilty but before he was sentenced), Kent Plunkett participated with Ellen, Barry, and Nancy Plunkett in a fraudulent scheme to mortgage the Plunkett Property and advance money to Ellen, Barry, and Nancy Plunkett. Am. Compl. ¶¶ 34-38 [Doc. No. 37].

On August 15, 2022, Defendants (except Denise Plunkett) all knew there were multiple fraudulent mortgages on the Plunkett Property, which formed the basis for the indictment of Barry and Nancy Plunkett, of Barry Plunkett's disbarment, and of litigation then-pending in Massachusetts Land Court against Ellen Plunkett. Id. ¶ 37.

5. The Criminal Judgment Against Barry and Nancy Plunkett and the Initial Forfeiture Proceedings

On August 25, 2022, the court entered a judgment as to both Defendants. See Judgment as to Barry Wayne Plunkett, Jr. [Doc. No. 135]; Judgment as to Nancy Plunkett [Doc. No. 142].[8] Barry Plunkett and Nancy Plunkett were ordered to pay restitution of $3,054,759.71, see

---

[8] All citations in this subsection are to the docket in the criminal case, 20-cr-10140-MLW.

Judgment as to Barry Wayne Plunkett, Jr. [Doc. No. 135]; Judgment as to Nancy Plunkett [Doc. No. 142], and an Order of Forfeiture (Money Judgment) was incorporated into each judgment, see Order of Forfeiture (Money Judgment) [Doc. 135-1], [Doc. No. 142-1].[9]

On September 1, 2022, in connection with the charges against Barry Plunkett, the court overseeing the criminal proceedings issued a Preliminary Order of Forfeiture against various property, including the Plunkett Property, and the 112 Realty Trust II. See Preliminary Order of Forfeiture for Substitute Assets at 3 [Doc. No. 146]. Plaintiffs do not allege that they filed a forfeiture petition or any other papers in the criminal action against Barry and Nancy Plunkett to protect any alleged interest in the property identified for forfeiture.

On August 7, 2023, the court determined, over objections by Defendants James and Ellen Plunkett and the 112 Realty Trust II, that Barry Plunkett's 1/3 interest in the 112 Realty Trust II was subject to forfeiture. See Order [Doc. No. 189]; see also Mem. & Order [Doc. No. 192].

6.   Alleged Wrongdoing by the Defendants and the Final Forfeiture Proceedings

Plaintiffs allege that James and Denise Plunkett became trustees of the 112 Realty Trust II beginning June 26, 2024, and that these Defendants now falsely claim to be 1/3 beneficial owners of the Plunkett Property. See Am. Compl. ¶¶ 9-10 [Doc. No. 37].

On or about June 27, 2024, parties including Ellen Plunkett and several creditors of Barry Plunkett, entered a settlement agreement pursuant to which the parties withdrew their petitions in the Forfeiture Proceeding as to Barry Plunkett's 1/3 interest in the Plunkett Property and the 112 Realty Trust II. See App. Order of Forfeiture at 4, 20-cr-10140-MLW [Doc. No. 282-1].

---

[9] Defendant Nancy Plunkett was similarly ordered to forfeit $3,221,408. See App. Order of Forfeiture at 2 [Doc. No. 281-1]. The government agreed that such amount would be offset by any amount paid towards the forfeiture money judgment ordered against Defendant Barry Plunkett. See id.

7

In September 2024, one of the Plaintiffs learned that the Plunkett Property was for sale and that an agreement to sell had been reached. Am. Compl. ¶ 61. Plaintiffs allege, based on the docket in the criminal cases against Barry Plunkett, that Judge Wolf approved the sale of the Plunkett Property in accordance with an agreement made between Ellen and James Plunkett, the United States, and certain mortgagees. Id. ¶ 62.[10] Plaintiffs allege, upon information and belief, that Defendants Ellen and James Plunkett sought and intended to receive proceeds from the sale, and that other proceeds would be used to pay Barry Plunkett's creditors, including the United States. Id.

Later in September 2024, John Gregg asked Ellen Plunkett whether Defendants would honor their earlier promises to make John Gregg whole, at which time Ellen Plunkett stated that she did not recall such an agreement and implored John Gregg not to file a lawsuit. Id. ¶ 64.

On November 4, 2024, Judge Wolf ordered that: (1) the United States was entitled to the forfeiture of all of Barry Plunkett's 1/3 rights, title, and interests in the Plunkett Property and the 112 Realty Trust; (2) all other parties having any rights, title or interests in such 1/3 interest were thereby in default; (3) the United States's 1/3 interest was thereby transferred to Defendants Ellen and James Plunkett in equal shares in consideration for certain other payments made under the settlement agreement; and (4) Ellen Plunkett, James Plunkett, and the 112 Realty Trust II must remove the Defendant Barry Plunkett as beneficiary of the 112 Realty Trust II and take any steps necessary to ensure that he retained no interest in the Plunkett Property or 112 Realty Trust II. See id. at 5-6.

---

[10] Defendants acknowledge that a sale of the Plunkett Property occurred on September 18, 2024. See Opp. to Mot. to Remand at 5 [Doc. No. 25].

Plaintiffs allege that, but for their reliance on Defendants' promises, Plaintiffs would have been beneficiaries of the restitution order issued by Judge Wolf in the District of Massachusetts in the criminal action against Barry and Nancy Plunkett. Id. ¶¶ 58-59. Plaintiffs further allege that, but for their reliance on Defendants' promises, there would have been a criminal prosecution in Barnstable Superior Court, pursuant to which an order of restitution would have been made to benefit Plaintiffs. Id. ¶ 59.

*B. Discussion*

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013). The court finds no federal question jurisdiction here, for reasons other than those raised by the Plaintiffs,[11] and despite Plaintiffs' efforts throughout their pleadings to tie their unrelated claims to the Plunkett Property.

Defendants focus on the numerous mentions of the Plunkett Property in Plaintiffs' Verified Complaint and Amended Verified Complaint to argue that this case is "inextricably bound" with the federal criminal case involving Defendants Barry and Nancy Plunkett, such that "the two cannot be separated without causing significant prejudice" to the Defendants. See Opp.

---

[11] Plaintiffs' arguments as to the absence of federal question jurisdiction focus on whether cases are related under the local rules of the District of Massachusetts and are off point.

to Mot. to Remand at 9-10 [Doc. No. 25].[12] Defendants thus argue that core aspects of the case "are not only governed but preempted by the federal criminal forfeiture statutes invoked in the Criminal Case," including 18 U.S.C. § 982(a)(2)(A) and 21 U.S.C. § 853(p). See id. at 10. Relatedly, Defendants argue that this court has federal-question jurisdiction over this case because some or all of Plaintiffs' claims as to the Plunkett Property are "barred by prior orders" from Judge Wolf in the criminal case, particularly Judge Wolf's order that all parties except those stated in the court's order were in default as to claims to Barry Plunkett's 1/3 interest in the Plunkett Property. See Opp. to Mot. to Remand at 10-11 [Doc. No. 25]. Plaintiffs are not among those identified in that Order.[13]

Plaintiffs' repeated mentions of the Plunkett Property, however, are ultimately gratuitous. The wrongdoing they complain of involves the Gregg Property, not the Plunkett Property. What Plaintiffs are seeking is damages for state-law claims and the imposition of a constructive trust over proceeds from the sale of the Plunkett Property to satisfy any judgment. Plaintiffs repeatedly conceded at the hearing on the remand motion that Judge Wolf's order cannot be

---

[12] The cited Opposition to the Motion to Remand was filed on behalf of Ellen Plunkett, Denise Plunkett, and James Plunkett. Kent Plunkett joined in those arguments. See Kent Plunkett's Opp. to Mot. to Remand at 1 [Doc. No. 26].

[13] In fairness to Defendants, Plaintiffs' Opposition to Removing Defendants' Motion to Dissolve the Ex Parte TRO does suggest that Plaintiffs are inappropriately seeking to relitigate aspects of the criminal forfeiture proceeding, such as where Plaintiffs maintain that "[t]o the extent Moving Defendants make any claim to any portion of the escrowed funds otherwise belonging to or deriving from Barry Plunkett's 1/3 interest in the 112 Realty Trust II, that claim must take second priority over the Plaintiffs' claims of damage arising from Barry Plunkett's conduct." See Opp. to Mot. to Dissolve the TRO at 3 [Doc. No. 55]. As Defendants note, any arguments Plaintiffs make to that effect should fail, as Judge Wolf entered an order finding individuals who had not sought an interest in the property, including Plaintiffs, to be in default as to those interests. See Final Order of Forfeiture as to Barry Wayne Plunkett, Jr. at 5-6, United States v. Barry Wayne Plunkett, Jr., 20-cr-10140 [Doc. No. 280]. But as explained below, the fact that Plaintiffs are spuriously seeking to undermine a federal court order does not create a substantial federal question.

undone, modified, or reversed through this action. To the contrary, they emphasized that they were making no special claim to any particular piece of property or seeking to modify Judge Wolf's order through this action, and that this is not an action *in rem*. They stated that they had no preference as to whether any future judgment was satisfied by the proceeds of the sale of the Plunkett Property or, for instance, a winning lottery ticket owned by Defendants.

The mere existence of the federal court's judgment on forfeiture does not mean Plaintiffs' "right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 28 (1983). Defendants cite Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308 (2005), in which the Court found a federal question where, though plaintiff brought a state-law quiet title claim, the only legal or factual issue in the case was whether the IRS gave adequate notice within the meaning of a federal statute. See 545 U.S. at 314-15. While Defendants point out that both cases involve real property seized by the federal government, see Opp. to Mot. to Remand at 11-12 [Doc. No. 25], that is a superficial similarity and not the basis of the Grable Court's finding of federal question jurisdiction.

Defendants seek to suggest a substantial federal question akin to the one in Grable by emphasizing Plaintiffs' allegation that "Plaintiffs would have been the beneficiaries of the Restitution Order issued by this Court in the criminal case" had Defendants not promised that Plaintiffs would be made whole from the sale of the Plunkett Property. See Am. Compl. ¶ 59 [Doc. No. 37]. According to Defendants, this allegation raises the question of whether Plaintiffs are properly considered victims of the criminal conduct at issue in the criminal case, pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, such that they would have

been beneficiaries of the court's restitution order but for Defendants' misrepresentations. See Supplemental Opp. to Mot. to Remand at 7 [Doc. No. 59].

Even assuming that this question is somehow necessary for Plaintiffs to prevail on their claims, it is not a substantial federal question. In Gunn v. Minton, 568 U.S. 251 (2013), the Court held that a legal malpractice claim brought under state law did not raise a substantial federal question, where the success of plaintiff's claim necessarily depended on whether his lawyers would have prevailed in asserting the validity of plaintiff's patent had they raised an experimental-use argument in a patent infringement proceeding. See 568 U.S. at 255.[14] The Court explained that the question was not substantial because, among other reasons, due to "the backward-looking nature of a legal malpractice claim, the [federal] question [was] posed in a merely hypothetical sense: If [plaintiff's] lawyers had raised a timely experimental-use argument, would the result in the patent infringement proceeding have been different?" Id. at 261 (emphasis omitted). "No matter how the state courts resolve[d] that hypothetical 'case within a case,' it [would] not change the real-world result of the prior federal patent litigation. [Plaintiff's] patent [would] remain invalid." Id.[15]

So, too, here: no matter how a court now resolves the question of whether Plaintiffs could have been found to be victims as defined in the MVRA if they had timely filed a claim for

---

[14] As explained in cases cited by the Gunn Court, the experimental-use doctrine allows "an inventor who seeks to perfect his discovery [to] conduct extensive testing without losing his right to obtain a patent for his invention—even if such testing occurs in the public eye." Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 64 (1998).

[15] See also Tynsboro Sports II Solar, LLC v. Nat'l Grid USA Serv. Co., Inc., 88 F.4th 58, 68 (1st Cir. 2023) (comparing Grable and Gunn and concluding that a federal question was not substantial where it would not "pose a risk to some federal actor" and would not require "a new interpretation of [federal law] . . . which will govern a large number of cases") (alteration in original) (internal quotations omitted).

restitution in the criminal proceeding, it will not change the result of the restitution proceeding in the criminal case. And should the state court need to resolve such a question to determine the parties' rights here, Defendants offer no suggestion that the court could not simply "hew closely to the pertinent federal precedents" in reaching a determination. See Gunn, 568 U.S. at 262. Therefore, this is the kind of scenario in which any effects of addressing a federal question are so "fact-bound and situation-specific" as to be insufficient to establish federal question jurisdiction. Id. at 263 (citation omitted). Defendants' references to 18 U.S.C. § 982(a)(2)(A) and 21 U.S.C. § 853(p) are similarly unavailing.[16]

Therefore, this court does not have federal-question jurisdiction over this action.

**III.    Diversity**

*A. Procedural History and Allegations as to Citizenship*

On September 18, 2024, John Gregg and Scudder LLC (the "Original Plaintiffs") filed this action in state court. See Notice of Removal at 2 [Doc. No. 1]. They alleged that John Gregg is "seasonally residing at 570 and 586 Scudder Avenue, Hyannisport, MA," and that Scudder LLC is a Delaware Limited Liability Corporation established to serve as the holding company for the real estate at that address, with John Gregg, to his knowledge, the only member. Verified Complaint ¶¶ 1-2 [Doc No. 1-1]. They alleged further that the individual Defendants (except Barry Plunkett) all reside in Massachusetts, that Barry Plunkett is incarcerated in North Carolina, and that Shoreline LLC is a Delaware Limited Liability Company. Id. ¶¶ 3-9.

---

[16] Defendants argue that this court should disregard Plaintiffs' "artful pleading" of state-law claims and assess the underlying purpose of these claims, which Defendants argue is to "circumvent the federal forfeiture statutes and Criminal Case forfeiture proceeding." See Opp. to Mot. to Remand at 13 [Doc. No. 25]. As stated above, while it may be that Plaintiffs' efforts to obtain assets from the sale of the Plunkett Property are limited by federal orders concerning the Plunkett Property, that does not make Plaintiffs' state law claims federal claims in disguise.

On September 20, 2024, counsel for Denise Plunkett, James Plunkett, and Ellen Plunkett ("the Removing Defendants") agreed to accept service by email. See Sept. 20, 2024 Email Exchange at 1 [Doc. No. 1-5]. The same day, the Removing Defendants removed the case to this court pursuant to 28 U.S.C. § 1441, asserting jurisdiction under § 1331 (federal question) and § 1332 (diversity of citizenship). See Notice of Removal at 1 [Doc. No. 1]. The Notice of Removal stated that Ellen Plunkett is domiciled in and a resident of Alabama, that James Plunkett and Denise Plunkett are domiciled in and residents of New York, and that, on information and belief, Defendant Barry Wayne Plunkett, Jr. ("Barry Plunkett") is incarcerated in Kentucky, and Defendants Nancy Plunkett and Kent Plunkett are domiciled in and residents of Massachusetts. Id. ¶¶ 7-11. The Removing Defendants also asserted, on information and belief, that Plaintiff John Gregg is domiciled in and a resident of the United Kingdom. Id. ¶ 6.

On October 15, 2024, counsel signed an affidavit of acceptance of service on Kent Plunkett's behalf. See Aff. of Service Upon Gregory Kent Plunkett [Doc. No. 12].

On October 21, 2024, the Original Plaintiffs filed a Motion to Remand [Doc. No. 15] the case to state court. Mot. to Remand at 1 [Doc. No. 15]. The motion states, inter alia, that "[r]ecently it ha[d] come to [John] Gregg's attention that in fact he may not be the sole member of Scudder LLC and this his wife is also a member." Id. ¶ 12 (footnote omitted). The motion asserts further that Gregg's wife is a resident of Massachusetts. Id.

On November 25, 2024, the Removing Defendants filed a Rule 7.1 Disclosure Statement [Doc. No. 20] stating that Ellen Plunkett and Shoreline LLC are citizens of Alabama and James and Denise Plunkett are citizens of New York.

On December 6, 2024, the Original Plaintiffs filed a Rule 7.1 Disclosure Statement [Doc. No. 23] stating that: (1) John Gregg is a United States citizen who resides in the United Kingdom

14

and is domiciled in Puerto Rico; (2) on information and belief, the members of Scudder LLC are John Gregg and Christine Gregg; and (3) Christine Gregg is a Unites States citizen with a Swiss passport who resides in the United Kingdom and when in the United States resides in Massachusetts. On the same day, Defendant Kent Plunkett filed a Rule 7.1 Disclosure Statement [Doc. No 24] stating that he resides in Massachusetts.

Removing Defendants and Kent Plunkett opposed the motion to remand shortly thereafter. See Opp. to Mot. to Remand [Doc. No. 25]; Kent Plunkett's Opp. to Mot. to Remand [Doc. No. 26]. The Removing Defendants included with their filing supporting documentation, including: Denise Plunkett's Declaration [Doc. No. 25-2] and James Plunkett's Declaration [Doc. No. 25-3] stating facts as to their New York domicile, and Ellen Plunkett's Declaration [Doc. No. 25-4] stating facts as to her Alabama domicile.

On January 31, 2025, Plaintiffs filed an Amended Complaint [Doc. No. 37], that inter alia, added Christine Gregg as a Plaintiff and updated Plaintiffs' citizenship allegations to match their Rule 7.1 Disclosure Statement [Doc. No. 23].

On February 24, 2025, the Removing Defendants filed, with leave of court, a Supplemental Opposition to the Original Plaintiffs' Motion to Remand [Doc. No. 59], to address the new allegations in the Amended Complaint [Doc. No. 37]. See Supplemental Opp. to Mot. to Remand [Doc. No. 59].

Plaintiffs subsequently filed a Return of Service [Doc. No. 65] stating that Nancy Plunkett was served with the Amended Complaint and Summons [Doc. No. 37] on February 27, 2025.[17]

---

[17] There is no indication on the docket that Plaintiffs have served process on Barry Plunkett or Shoreline LLC.

B. *Discussion*

To invoke diversity jurisdiction under 28 U.S.C. § 1332, two requirements must be satisfied. First, the amount in controversy must exceed $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a). Second, the dispute must be between: "(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state . . .; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; [or] (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States." 28 U.S.C. § 1332(a). "United States citizens who are domiciled abroad are citizens of no state; their 'stateless' status destroy[s] complete diversity under § 1332(a)(3), and [their] United States citizenship destroy[s] complete diversity under § 1332(a)(2)." D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra, 661 F.3d 124, 126 (1st Cir. 2011) (quoting Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 829 (1989)) (internal quotations omitted).[18] The citizenship of a limited liability company ("LLC") "is determined by the citizenship of all of its members." Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marine, Inc., 435 F.3d 51, 54 (1st Cir. 2006); Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990).[19]

---

[18] "[F]or a dual national citizen, only the American citizenship is relevant for purposes of diversity under 28 U.S.C. 1332." Falken Indus., Ltd. v. Johansen, 360 F. Supp. 2d 208, 210 (D. Mass. 2005) (quoting Coury v. Prot, 85 F.3d 244, 250 (5th Cir. 1996)). See also Spiteri v. Russo, 2013 WL 4806960, at *61 (E.D.N.Y. Sept. 7, 2013) (collecting cases).

[19] Courts consider a number of factors in determining an individual's domicile, including "current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs and other associations; place of employment or business; driver's license and other automobile registration; [and] payment of taxes." See García Pérez v. Santaella, 364 F.3d 348, 351 (1st Cir. 2004) (quoting 13B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3612 (2d ed. 1984)) (alterations in original).

Defendant Ellen Plunkett is domiciled in Alabama, and Defendants James and Denise Plunkett are domiciled in New York. See Rule 7.1 Disclosure Statement [Doc. No. 20]. Defendant Shoreline LLC has one member, Defendant Ellen Plunkett, so the LLC also is a citizen of Alabama. See id. Defendant Kent Plunkett is domiciled in Massachusetts. See Gregory Kent Plunkett Disclosure Statement [Doc. No. 24]. Defendant Barry Plunkett is incarcerated and has not been served, but is likely a citizen of Massachusetts.[20] Defendant Nancy Plunkett is also alleged to be a citizen of Massachusetts, see Am. Compl. ¶ 5 [Doc. No. 37], and the factual record supports that allegation, see Plunkett Declaration ¶ 6 (stating that Nancy Plunkett is married to Barry Plunkett, and on information and belief, resides with her parents in Massachusetts) [Doc. No. 25-4].[21]

Therefore, there is complete diversity in this action if all Plaintiffs are citizens of one or more states other than Alabama, New York, or Massachusetts. Mr. Gregg is a citizen of Puerto Rico, a "State" for the purposes of diversity jurisdiction. See Plaintiffs' Rule 7.1 Disclosure Statement [Doc. No. 23]; 28 U.S.C. § 1332(e) (defining "States" to include the Commonwealth of Puerto Rico). Considering only his citizenship and the original claim that Scudder LLC's only member was John Gregg, the parties would be diverse.

---

[20] "In cases involving prisoners, the courts presume that the prisoner remains a citizen of the state where he was domiciled before his incarceration, even if he is subsequently incarcerated in a different state." Hall v. Curran, 599 F.3d 70, 72 (1st Cir. 2010). Relevant factors for the court to consider as to whether that presumption is overcome include "the prisoner's declaration of intentions, the possibility of parole . . ., the manner in which [he] has ordered his personal and business affairs, and any other factors that are relevant to corroboration of [the prisoner's] statements." Id. (internal quotations omitted) (changes in original). No information to rebut the presumption has been offered by any party here.

[21] Plaintiffs' Motion to Remand [Doc. No. 15] suggests that the citizenships of One Twelve Realty Trust and 112 Realty Trust II are in dispute, but Plaintiffs have sued no such entity here.

In light of the Amended Complaint [Doc. No. 37], however, the court must consider the citizenship of Christine Gregg.[22] Plaintiffs' Motion to Remand [Doc. No. 15] stated that Christine Gregg "is a resident of Massachusetts." See Mot. to Remand ¶ 12 [Doc. No. 15]. Plaintiffs' 7.1 Disclosure Statement [Doc. No. 23] states that Christine Gregg "is a United States citizen who was born in this country. She has a Swiss passport but has not been a resident of that country for many years. She resides in the United Kingdom and when she is in the United States, she resides in Hyannisport, Massachusetts." Plaintiffs' Rule 7.1 Disclosure Statement [Doc. No. 23]. Plaintiffs' Amended Complaint [Doc. No. 37] states the same. See Am. Compl. ¶ 2 [Doc. No. 37].

Christine Gregg has since filed an affidavit concerning her citizenship. See Aff. of Christine Letter Gregg [Doc. No. 66]. In her affidavit, she states that: (1) she is a member of Scudder LLC; (2) she owns property in Hyannis Port, MA; (3) her current address is in London; (4) all of her children attend school in the United Kingdom; (5) she resides during the summer in Hyannis Port for approximately four months of the year; (6) she is an American citizen; (7) she visits Puerto Rico at most 2 weeks per year; (8) she files federal income taxes and Massachusetts state income taxes; and (9) she belongs to golf clubs and other clubs in Cape Cod, MA. Id. ¶¶ 1-10.

Based on these facts, supported by an affidavit, this court finds jurisdictional discovery is not needed and that Christine Gregg is either a citizen of the United Kingdom or Massachusetts. In either case, this court lacks diversity jurisdiction over this action.

---

[22] Her citizenship is now relevant not only because she was added as a Plaintiff but also given the new allegation that she is a member of Scudder LLC.

### IV. Legal Fees

Plaintiffs seek attorneys' fees and costs incurred as a result of the improper removal of this action. See Mot. to Remand ¶¶ 40-41 [Doc. No. 15]. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c) (emphasis added). This court finds that the payment of such costs and expenses is not warranted here.

The Verified Complaint [Doc. No. 1-1] alleged that Scudder LLC's sole member was John Gregg. Based on that allegation, removal on diversity grounds was warranted. Plaintiffs then waited over six weeks after filing their Motion to Remand [Doc. No. 15] before filing their 7.1 Disclosure Statement [Doc. No. 23] confirming that Scudder LLC had a second member, Christine Gregg. Her citizenship was not fully disclosed until the court demanded an affidavit at the remand hearing. In light of Plaintiffs' changing allegations and delay, legal fees are unwarranted.

### V. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Remand [Doc. No. 15] is GRANTED as to the request to remand and DENIED as to the request for fees. This case shall be remanded to the Barnstable County Superior Court for further proceedings. The Motion to Dissolve the Ex Parte TRO [Doc. No. 31] and Motion to Dismiss Amended Complaint [Doc. No. 48] remain open for the state court's consideration.

IT IS SO ORDERED.

March 19, 2025                                        /s/ Indira Talwani
                                                     United States District Judge